UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

JAACKCIRELYS PEREZ GUERRA,　　　　　　　　　　　　　　　　　Petitioner,

v.　　　　　　　　　　　　　　　　　　　　　Civil Action No. 4:25-cv-119-RGJ

JASON WOOSLEY, et al.　　　　　　　　　　　　　　　　　　　Respondents.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Jaackcirelys Perez Guerra's Writ of Habeas Corpus and emergency relief. [DE 1]. Respondents responded on October 23, 2025. [DE 11]. Petitioner replied on October 27, 2025. [DE 12]. The parties jointly agreed to forgo a hearing in this matter. [DE 10]. This matter is ripe for adjudication. For the reasons below, the Court will **GRANT** Guerra's Petition for a Writ of Habeas Corpus and emergency relief.

### I.　　　Background

Petitioner Jaackcirelys Perez Guerra, ("Guerra") is a native and citizen of Venezuela. [DE 1 at 1]. She has been in the United States for more than two years and was originally paroled into the United States under the Cubans, Haitians, Nicaraguans, and Venezuela's program ("CHNV Program"). [*Id.*]. The program was terminated on May 30, 2025, pursuant to *Dep't of Homeland Sec. et al., v. D.V.D. et al.,* 606 U.S. ___ (2025). Less than two weeks later, on June 13, 2025, the United States Department of Homeland Security issued Guerra a Notice of Termination of Parole. [*Id.* at 2].

Originally, Guerra fled Venezuela with her father to escape political persecution. [*Id.*]. Guerra is currently a derivative on her father's asylum application, which is pending. [*Id.*]. Additionally, Guerra is engaged to a U.S. citizen and has no criminal record. [*Id.*].

Guerra was arrested on September 30, 2025, by Immigration and Customs Enforcement ("ICE") officers without a warrant. [*Id.*]. She was arrested without a warrant because ICE agents

intended to arrest Guerra's roommate, but instead arrested Guerra after being unable to locate the roommate. [*Id.*]. Upon being taken into custody, ICE issued a Notice to Appear and placed Guerra in removal proceedings before the Port Isabel Immigration Court in Los Fresnos, Texas. [*Id.*]. ICE contends that based on new interim guidance from DHS, issued July 8, 2025, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission," only those noncitizens who have already been admitted into the United States are eligible to be released during removal proceedings and all other noncitizens are subject to mandatory detention, under 8 U.S.C. § 1225 ("Section 1225"), not 8 U.S.C. § 1226 ("Section 1226"). [*Id.* at 5]. This is a reversal of ICE's longstanding policy. [*Id.*]. However, according to the later issued Notice to Appear and Warrant by the United States, the detention of Guerra is pursuant to Section 236 of the Immigration and Nationality Act ("INA") which corresponds to Section 1226 of the United States Code. [DE 11-3 at 73; DE 12 at 78].

Guerra contends that her continued mandatory detention without the possibility to request a bond hearing, which separates her from her father and fiancé, violates the Due Process Clause of the Fifth Amendment, and the INA. [DE 1 at 5-6]. The United States contends that this matter is "unlike other cases" before this Court, which concerned "an applicant for admission 'who had not been admitted or paroled'" because this case concerns a "petitioner who is an arriving noncitizen" and thus within the category of individuals contemplated by 1225(b). [DE 11 at 51-52]. Guerra denies this case is any different from others before this Court and other trial courts, and the primary question is one of statutory interpretation. [DE 12 at 74].

Guerra seeks release from her detention, or in the alternative, to hold a bond hearing before a neutral Immigration Judge to determine whether she should remain in custody. [DE 1 at 20].

## II.   Exhaustion of Remedies

The United States contends that Guerra should be required to exhaust her administrative remedies. [DE 11 at 54]. In response, Guerra contends that the Court should find that either exhaustion is not required, or in the alternative, the Court should waive exhaustion. [DE 12 at 81].

When neither a statute nor rule mandates exhaustion, it is within the Court's "sound judicial discretion" whether to require exhaustion. *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013). This is also known as "prudential exhaustion." *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019). The INA *only* mandates administrative exhaustion when challenging "final order[s] of removal." 8 U.S.C. § 1252(d)(1).

Thus, no applicable statute or rule mandates exhaustion. As a result, it is within the Court's "sound judicial discretion" whether to require exhaustion. *Shearson* 725 F.3d at 593. The Sixth Circuit has not adopted any formal test, but instead, many trial courts within the Sixth Circuit borrow the Ninth Circuit test from *United States v. Cal. Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983). In the alternative, a court can also choose to waive exhaustion, when the "legal question is fit for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000).

Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). As other courts within the Sixth Circuit have used the above test, so will this Court. *See id; Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *3 (E.D. Mich. Sep. 9, 2025); *Villalta v. Greene*, 2025 WL

2472886, at *2 (N.D. Ohio Aug. 5, 2025). Using those factors, the Court finds that all factors favor weigh *against* requiring exhaustion.

First, the central question at issue in this matter is which detention provision, Section 1225 or Section 1226, applies to Guerra. This is a purely legal question of statutory interpretation, which this Court, and other courts within this circuit, have already addressed. *See Martinez-Elvir v. Olson,* 2025 WL 3006772, at *5 (W.D. Ky. Oct. 27, 2025); *Pizarro Reyes*, 2025 WL 2609425, at *3. Alternatively, even if an agency has interpreted the relevant statutes, this Court is not bound or deferential to any agency interpretation of a statute. *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 413 (2024) ("courts need not and under the APA *may not* defer to an agency interpretation of the law simply because a statute is ambiguous") (emphasis added). Therefore, the Court does not need any agency expertise to help in their consideration of this purely legal decision. *Id.*

Second, because of the alleged Constitutional violation, an appeal to an administrative review board, here the BIA, is not necessary. The Sixth Circuit has held that due process challenges generally do not require exhaustion because the BIA cannot review constitutional challenges. *Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006); *Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) ("[E]xhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures") (citation omitted); *Lopez-Campos,* 2025 WL 2496379, at *4 (holding that because Lopez-Campos' habeas petition includes a due process claim, the appeal and process through an administrative scheme "is likely futile").

And lastly, the United States has made clear its position on Section 1225 as it applies to Guerra. The United States has taken this position in similar cases before this Court, and across the country. *See e.g., E.V. v. Raycraft,* 2025 WL 2938954 (N.D. Ohio Oct. 16, 2025); *Martinez-Elvir,* 2025 WL 3006772, at *5; *Pizarro Reyes*, 2025 WL 2609425, at *4; *Patel v. Tindall*, 2025 WL 2823607, at *2-4 (W.D. Ky. Oct. 3, 2025); *Simpiao v. Hyde*, 2025 WL 2607924, at *7 (D. Mass.

4

Sep. 9, 2025). Therefore, it is unlikely that any administrative review would lead to the United States changing its position and precluding judicial review. *Sterkaj*, 439 F.3d at 279. As a result, based on the above factors, this Court finds that prudential exhaustion is not required.

Furthermore, in situations similar to the present, courts can also waive exhaustion. *Lopez-Campos*, 2025 WL 2496379, at *5 ("[b]ecause exhaustion would be futile and unable to provide Lopez-Campos with the relief he requests in a timely manner, the Court waives administrative exhaustion and will address the merits of the habeas petition."); *Pizarro Reyes* 2025 WL 2609425, at *4 ("if the Court requires administrative exhaustion, Pizarro Reyes faces not only more, potentially unnecessary, months in prison, but also harm to his ability to mount a successful case against his removal. As a result, the Court will waive administrative exhaustion."); *Simpiao,* 2025 WL 2607924, at *6-7 (holding that because "the policy concerns animating the common-law exhaustion" are absent, "waiver of exhaustion is warranted").

And, as the Court in *Lopez-Campos* noted, bond appeals before the BIA on average take six months to complete. *Lopez-Campos*, 2025 WL 2496379, at *5 (citing to *Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1245 (W.D. Wash. 2025)). These "delays inherent" in the BIA process "would result in the very harm that the bond hearing was designed to prevent." *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019). Prolonging Guerra's detainment would mean unnecessary hardship, especially when the Court is able to resolve the purely legal question now. *Martinez-Elvir,* 2025 WL 3006772, at *5; *Lopez-Campos*, 2025 WL 2496379, at *5.

Therefore, this Court will follow their fellow trial courts and waive the exhaustion requirement for Guerra and reach the merits of her Petition.

### III.  Discussion

#### A.  Section 1225 vs. Section 1226

The United States contends that this case "does not concern [Section 1226] but rather only deals [Section 1225]." [DE 11 at 51]. The United States claims that petitioner is an "arriving noncitizen" and thus within the category of "individuals contemplated by [Section1225(b)]." [*Id.* at 51-52]. However, Guerra responds that this Court's previous decisions in *Beltran Barrera v. Tindall*, 2025 WL 2690565 (W.D. Ky. Sep. 19, 2025) & *Singh v. Lewis*, 2025 WL 2699219 (W.D. Ky. Sep. 22, 2025) should control. [DE 12 at 75]. Guerra points to not only these decisions, but four other decisions from trial courts within the Sixth Circuit, along with nearly 40 other decisions, spanning nine circuits, supporting Petitioners' interpretation of Section 1226 versus Section 1225. [*Id.*].

The matter of whether Section 1226 applies *at all* to individuals who were part of the CHNV program is one of first impression to this Court. Still, this Court's previous decision in *Patel v. Tindall,* 2025 WL 2823607 (W.D. Ky. Oct. 3, 2025) and a District Court decision, *E.V. v. Raycraft,* 2025 WL 2938954 (N.D. Ohio Oct. 16, 2025), from the Northern District of Ohio help guide this decision. In *Patel,* this Court held that "an individual who has been paroled without first having been placed in expedited removal cannot later be designated for expedited removal." *Id.* at 6 (emphasis in original). Those individuals must be placed into standard removal proceedings under Section 1226. *Id.* The Court fully incorporates by reference its reasoning and decision in that action.[1]

In *E.V.*, the trial court noted that have been "numerous challenges to DHS's decisions eliminating the CHNV Parole Program and applying expedited removal proceedings to noncitizens

---

[1] The underlying reasoning from *Patel* is primarily based upon *Coalition for Human Immigrant Rights v. Noem*, 2025 WL 2192986 (D.D.C. Aug. 1, 2025) and *Make the Road New York v. Noem*, 2025 WL 2494908 (D.D.C. Aug. 29, 2025). The D.C. Circuit has denied a stay of the underlying opinion in both cases.

who are (or were) paroled under such programs." 2025 WL 2938954, at *3. Petitioner E.V., like Guerra, was a recipient of the CHNV parole program, and was granted parole upon entering the country. *Id.* at *3-4. Like Guerra, E.V. was arrested after their parole expired and was placed into expedited removal proceedings. *Id.* The Ohio trial court, based upon the similar reasoning that this Court used in *Patel,* stated they would join "the numerous district courts that hold § 1225 does not authorize expedited removal of noncitizens who have been paroled into the United States under either § 1225(b)(1)(A)(i) (arriving aliens) or § 1225(b)(1)(A)(iii)(II) (individuals not admitted or paroled into the United States and who have not been continuously present for at least two years, regardless of the status of that parole)." *Id.* Therefore, applying this reasoning, Guerra, who was paroled upon entry into the United States through the CHNV program, cannot later be designated for expedited removal. *Patel*, 2025 WL 2823607, at *4; *E.V.*, 2025 WL 2938594, at *4.

The Court further notes that the record reveals Respondents' current argument stands in direct opposition to Respondents' *own* stated basis for detaining Guerra. The arrest warrant, attached to the United States' Response, cites Section 236 of the INA as the basis for detention. [DE 11-3 at 73]. Section 236 of the INA is codified at Section 1226 of the U.S. Code. As Petitioner notes, we "must assume that paperwork issued by the government means what it says." [DE 12 at 78]. This Court will not credit Respondents' "impermissible post hoc rationalization" for detention. *Martinez-Elvir*, 2025 WL 3006772, *9 (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22 (2020)).

Thus, Guerra is subject to the standard removal and detention proceedings pursuant to Section 1226. The Court must now examine if the process Guerra was afforded is consistent with the Due Process Clause.

### B. Lawfulness of Current Detention

As stated, Guerra is detained under Section 1226. Thus, the Court must determine whether the continued detention is in violation of her Due Process.

The Due Process Clause extends to all persons regardless of status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). This includes non-citizens. *Id.* To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976). The Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335. The United States contends that "Petitioner's due process rights as an arriving noncitizen does not overcome the Government's interests in maintaining her detention" and that "the detention, as applied here to Petitioner, is narrowly tailored to serve the Government's compelling interest in detaining her during her removal proceedings." [DE 11 at 61].

    *i.* Private Interest

It is undisputed Guerra has a significant private interest in not being detained. One of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Courts can also consider the detainee's condition of confinement. *Martinez v. Noem*, 2025 WL 2598379, at *2 (W.D. Tex. Sep. 8, 2025). This is to determine if the conditions are indistinguishable from criminal incarceration. *Id.* Guerra is being held at Grayson Counter Detention Center. [DE 1 at 2]. Guerra is currently a derivative

on her father's pending asylum application and is also separated from her United States citizen fiancé. [*Id.* at 2]. Because of the allegedly illegal detention, she is currently prevented from getting married, going to work, and participating in her community. [*Id.* at 16]. As a result, the first *Matthews* factor favors Guerra's position. *Martinez-Elvir*, 2025 WL 3006772, at *11.

        *ii.*    Risk of Error

The second factor concerns the risk of the erroneous deprivation of Guerra's liberty interest. As Guerra has not had the chance to present her evidence with counsel, in front of an immigration Judge, the United States is "usurp[ing]" the role of the Immigration Judge. *Sampiao v.* Hyde, 2025 WL 2607924, at *10 (D. Mass. Sep 9, 2025); *Martinez-Elvir*, 2025 WL 3006772, at *12; *Munoz Materano*, 2025 WL 2630826, at *15 (holding that Due process requires at a minimum the opportunity for the petitioner to submit evidence and be heard in front of an Immigration Judge). Respondents have not demonstrated that Petitioner is a flight risk or a danger to the community. In fact, Guerra has no criminal history and is engaged to a United States citizen. [DE 1 at 4]. She is also awaiting the decision of her father's asylum claim. [*Id.*]. In response, the United States asserts that "Petitioner's due process rights as an arriving noncitizen does not overcome the Government's interests in maintaining her detention." [DE 11 at 61]. However, the United States bases this argument on Guerra being subject to expedited removal. Thus, the Court finds this explanation "circular and wanting" and leads to a high likelihood of error. *E.V.*, 2025 WL 2938594, at *8 (stating that the United States logical reasoning for why expedited removal within mandatory detention satisfies due process as "circular and wanting"). Thus, because of a high risk of erroneous deprivation of Guerra's liberty interest, the second *Matthews* factor favors Guerra.

    *iii.*  United States' Interest

The final *Matthews* factor concerns the Unites States' interest in the procedure, as well as any financial or administrative burdens associated with permissible alternatives. *Matthews*, 424 U.S. at 335. The Court recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings. *Sampiao*, 2025 WL 2607924, at *12. But Petitioner has no criminal history and was originally granted parole through the CHNV program. [DE 1 at 2]. And as mentioned, it is not the role of the United States to "usurp" the role of an Immigration Judge. *Sampiao*, 2025 WL 2607924, at *10. Therefore, the Court finds that the United States' interest without a proper bond hearing is low. *Ramirez Clavijo v. Kaiser*, 2025 WL 2419263, at *6 (N.D. Cal. Aug. 21, 2025). Moreover, because a bond hearing includes the presentation of evidence from both parties and counsel, there are "existing statutory and regulatory safeguards adequately serve the governmental interest in promoting public safety." *Günaydin v. Trump*, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025). As a result, the Court finds that the third *Matthews* factor also favors Guerra.

* * *

As all three *Matthews* factors favor Guerra's arguments, her current detention without a bond hearing is in violation of the Due Process Clause and the INA.

As a remedy, courts across the country have ordered the release of individuals stemming from ICE's illegal detention. *Patel*, 2025 WL 2823607, at *6; *Beltran Barrera*, 2025 WL 2690565, at *7; *Roble v. Bondi*, 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). The Supreme Court has also recognized that "Habeas has traditionally been a means to secure release from unlawful detention." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (emphasis in original). The Court will not depart from this norm. As a result, pursuant to Section 1226, Petitioner must be

released and provided with a bond hearing on the merits before a neutral Immigration Judge. *Martinez-Elvir,* 2025 WL 3006772, at *13; *Espinoza*, 2025 WL 2675785, at *11; *Ramirez Clavijo*, 2025 WL 2419263, at *6; *Munoz Materano*, 2025 WL 2630826, at *20.

## IV.   Conclusion

For the reasons stated above, the United States has violated Guerra's due process rights. The Court **GRANTS** Guerra's Petition for Writ of Habeas Corpus [DE 1]. The United States is directed to release Petitioner Guerra and provide her with a bond hearing before a neutral Immigration Judge; and further, to certify compliance with the Court's order by a filing on the docket no later than **November 4, 2025.**

*Rebecca Grady Jennings, District Judge*
United States District Court

October 31, 2025